IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

DALE B. ADAMS

PLAINTIFF

v.                    Civil No. 10-3120

UNITED STATES DEPARTMENT OF
AGRICULTURE; and THOMAS L. VILSACK,
United States Secretary of Agriculture                    DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Dale B. Adams (Adams), filed this complaint against the United States Department of Agriculture (USDA) and Secretary of Agriculture Thomas L. Vilsack under the provisions of the Freedom of Information Act (FOIA), 5 U.S.C. § 552 and the Administrative Procedure Act (APA), 5 U.S.C. § 701.

### 1. Background

In support of their summary judgment motion, Defendants have provided : the declaration of Jacqueline C. Lenzy (Lenzy), FOIA Specialist with the USDA, Food Safety Inspection Service (FSIS), *Defendants' Exhibit* (hereinafter *Defs' Ex.*) 1 at ¶ 1; the declaration of Karen Petrus (Petrus), Administrative Programs Director with the USDA, Rural Development, stationed in Little Rock, Arkansas. *Defts' Ex.* 2 at ¶ 1. One of her duties is processing FOIA requests. *Id.* at ¶ 2; the declaration of Sara L. Sullivan (Sullivan), FOIA officer, Rural Development, stationed in Washington. *Defts' Ex.*3 at ¶ 1; the declaration of Joseph Tangredi (Tangredi), FOIA

-1-

Management analyst in the USDA FOIA Center, stationed in Washington. *Defts' Ex* 4 at ¶ 1;

and a *Vaughn* index.[1]

For ease of discussion, the Court will refer to the FOIA requests in the same manner as

the USDA. They are:

Request 1--Plaintiff's Exhibit E to the Original Complaint (Doc. 1), dated August
12, 2009;

Request 2--Plaintiff's Exhibit A to the Amended Complaint (Doc. 13), dated
August 20, 2010;

Request 3--Request dated July 16, 2010;[2]

Request 4--Plaintiff's Exhibit B to the Amended Complaint (Doc. 13) dated
October 19, 2009;

Request 5--Plaintiff's Exhibit H to the Original Complaint (Doc. 1) dated
November 28, 2009;

Request 6--Plaintiff's Exhibit A to the Original Complaint (Doc. 1) dated
September 30, 2010;

Request 7--Plaintiff's Exhibit D to the Amended Complaint (Doc. 13) dated
August 21, 2010;

Appeal 1--Plaintiff's Exhibit C to the Amended Complaint (Doc. 13) dated
August 20, 2010;

Appeal 2--Plaintiff's Exhibit C to the Original Complaint (Doc. 1) dated
November 25, 2010.

---

[1]The *Vaughn* index is prepared by the agency and describes the documents responsive to an FOIA request and indicates the reasons for redactions in sufficient detail to allow a court to make an independent assessment of the claims for exemptions from disclosure. *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973).

[2]Defendants refer to Exhibit I to the Original Complaint. This is not the FOIA request but a document dated August 20, 2010, and appealing the determination that there were no records responsive to the July 16th request.

-2-

A chronology of Adams' FOIA requests follows.  The first request (Request 1) dated August 12, 2009, was received by the FSIS and assigned control number FOIA 2009-00298. *Defts' Ex.* 1 at ¶ 4.  Adams sought copies of USDA records pertaining to violations committed by Tony Shearer GMP III, second shift debone, Green Forest, Arkansas.  *Id.*  The USDA sought clarification to include specific dates and incidents prior to conducting a search for responsive documents.  *Id.*

On or about October 19, 2009, the USDA received a FOIA request (Request 4) from Cherie L. [Gattis] Adams.  *Defts' Ex.* 2. at ¶ 4.  The request asked for "all records pertaining to a USDA low income loan I received and any information about this property we currently reside at."  A complete copy of her file was provided on November 9, 2009.  *Id.*

According to Adams, the next FOIA request (Request 5) made by Cherie Adams was submitted on November 28, 2009.  *Complaint* (Doc. 1) *Ex.* H.  However, Sullivan asserts that the USDA has no record of receiving an FOIA request from Cherie Adams on November 28, 2009.  *Defts' Ex.* 3 at ¶ 4.

On July 16, 2010, the USDA received a FOIA request (Request 3) dated that day from Adams for all records regarding Tyson Foods wrongfully accusing Adams of being a danger to food products or placing him under the jurisdiction of the BioTerrorism or Patriot Act watch list.  *Id.* at ¶ 5.   A search was conducted but no responsive documents were located.  *Id.*  On July 19th, the USDA sent Adams a letter stating it was unable to locate any records that were responsive to the request.  *Id.*

On August 27, 2010, the FSIS received a FOIA request (Request 2) dated August 20, 2010.  The request was placed under control number FOIA 2009-00298.  *Defts' Ex.* 1 at ¶ 5.

-3-

Adams indicated he had received no response to his request for information made "over 8 months" ago. *Amended Complaint* (Doc. 13) *Exhibit* A.  Adams requested the following:

> any and all documents relating to Tyson Foods USDA and FSIS food safety violations reported at Tyson Foods plant in Green Forest, Arkansas during 2009 and 2010;
>
> any and all records related to complaints made against Tyson Foods for violating USDA laws and USDA rules and regulations;
>
> any and all records related to Tyson Foods being penalized for violating these statutes;
>
> any and all information about Tyson Foods employees or management that were disciplined for violating these statutes;
>
> any and all information, call logs, emails, photographs, and sound or visual recordings, memos, any with Tyson Foods or their lawyers, any correspondence or data from any state, federal official or administrative agency regarding the USDA ignoring or concerning me and my communications.

*Id.*

The USDA conducted a search of its records and located 3,200 pages of documents responsive to the August 12, 2009 (Request 1), and August 20, 2010 (Request 2), FOIA requests. *Defts' Ex. 1 at* ¶ 5.  On December 16, 2011, the 3,200 pages were released in part to Adams. *Defts' Ex.* 1, *Attachment* 1.  The USDA claimed that portions of the requested records fell within exemptions §§ 552(b)(4)(trade secrets and commercial or financial information that is confidential), (b)(6)(disclosure would cause unwarranted invasion of personal privacy), and (b)(7)(c)(personal information in law enforcement records). *Id.*

On August 21, 2010, the USDA received a request (Request 7) from both Dale Adams and Cherie Adams. *Defts' Ex.* 2. at ¶ 6.  The document contained a request for expedited

-4-

processing.  *Amended Complaint* (Doc. 13) at Exhibit D.  They sought copies of the following

USDA records:

> any and all documents relating to Tyson Foods and Dale Adams;

> any and all information, records, call logs, emails, photographs, and sound or
> visual recordings, memos, or any contact with Tyson Foods, their lawyers, a

> any and all information, records, call logs, emails, photographs, and sound or
> visual recordings, memos, or any contact with Tyson Foods, their lawyers, any
> correspondence or data from any state, federal official or administrative agency
> regarding the USDA, Tyson Foods and Dale Adams pertaining to Adams' March
> 10th suspension or any matter regarding these parties;

> any correspondence or data from any state, federal official or administrative
> agency regarding the USDA, Tyson Foods and Dale Adams pertaining to his
> March 13, 2009, termination or any other matter regarding these parties or any
> communications to and from these parties.

*Id.*

Adams also incorporates with his August 21, 2010, request a FOIA request he indicates

he submitted on August 17, 2009.  *Id.*  This document requests:

> any and all documents, titles, files, permits, email transmissions, loan documents,
> agreements, memos, phone logs or inspections, inspection tags in reference to any
> construction permits, loan or grant denials, correspondence about and/or work
> completed at the address of 2313 Anvil Drive, Harrison, Arkansas;

> any and all information about the where abouts of William Bill Rowland on the
> dates April 11, 2009 and on the date June 11, 2009;

> any and all records about [William Rowland's] visit at our home and any action
> he took to provide us a 504 loan to repair the home;

> any and all phone call logs or memos about him calling us to make an
> appointment to come to our home on June 11, 2009;

> any and all USDA ebooks, records or documents about food safety at poultry
> plants concerning potential aggressors and guidelines or recommendations used
> when a potential aggressor has been rightfully or wrongfully labeled as such;

-5-

> any and all phone logs or any communications from the USDA Rural Development in Arkansas to the USDA FSIS office at Green Forest, Arkansas during and after February and March 2009; and

> a file marked copy of the Standard Form (SF) 95 mailed to the USDA.

*Id.*

The USDA was unable to locate any responsive documents other the loan file and the complete SF 95. *Defts' Ex.* 2 at pg. 3. The loan file had been provided to Cherie Adams on November 12, 2009. *Id.* On August 31, 2010, the USDA released in full the SF 95. *Id.*

On August 31, 2010, the USDA received an FOIA appeal (Appeal 1) from the Plaintiff dated August 20, 2010. *Complaint* (Doc. 13) *Exhibit* C. The appeal concerned Adams' July 16, 2010, FOIA request. *Id.* The appeal was assigned control number 10-009-A. *Defts' Ex.* 3 at ¶ 5. In response to the appeal, a second search was conducted and the USDA was unable to locate any responsive records. *Id.* Adams was notified by letter that there were no responsive records.[3] *Id.*

According to Tangredi, on October 20, 2010, the USDA received a FOIA request (Request 6) dated September 30, 2010. *Defts' Ex.* 4. at ¶ 4. The request was assigned control number OSEC-11-03. *Id.* Adams sought copies of his own correspondence with the USDA. *Id.* Eight pages of responsive documents were found and released in full to Adams on November 5, 2010. *Id.*

According to Adams, on November 25th, he submitted an appeal (Appeal 2) to Courtney Wilkerson, Assistant Secretary for Administration. *Complaint* (Doc. 1) *Ex.* C. However, the

---

[3] Sullivan states that the letter was dated April 18, 2010. *Defts' Ex.* 3 at ¶ 5. Clearly this is in error because the appeal was not received until August 31, 2010. *Defts' Ex.* 3 at ¶ 5.

AO72A
(Rev. 8/82)

USDA indicates it has no record of Adams submitting an appeal related to the September 30, 2010, request.

### 2.  Summary Judgment Standard

"Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). We view all evidence and inferences in a light most favorable to the nonmoving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).  However, the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Celotex v. Catrett*, 477 U.S. 317, 324 (1986).

### 3.  Arguments of the Parties

The Defendants first maintain the Secretary of Agriculture Thomas Vilsack is not a proper party to this case as the Court's authority in FOIA cases is limited to directing the agency to produce erroneously withheld documents.  Second, Defendants maintain Adams is without standing to bring an action based on FOIA requests 4 and 5 as they were made by Cherie Adams. Third, with respect to FOIA requests 6 and 7, Defendants assert that Adams failed to exhaust his administrative remedies by not submitting timely appeals.  Fourth, with respect to Requests 1-3 and Appeal 1, Defendants maintain they responded to the FOIA requests and provided all records (in full or in part) to Adams.  Fifth, Defendants assert that the APA claims are subject to dismissal because Adams has an available statutory remedy, the FOIA.  Finally, Defendants argue Adams is not entitled to attorney's fees under EAJA because it does not apply to actions brought under the FOIA.

-7-

Adams asserts that this case is "not about the FOIA laws or the APA, it is about a conspiracy of numerous federal agencies working together in an <u>enforcement action of the Patriot Act</u> to intentionally deprive [him] of civil and Constitutional rights to deliberately entrap him with any crime." <u>Doc. 29 at pg. 4.</u> He also maintains these agencies "are using the court as a willing accomplice for this travesty of justice--to cause deaths." *Id.* He indicates he pleaded with the USDA "to abide by the FOIA laws so he could preserve the life of his family members and they showed a deliberate disregard for life, the APA or FOIA laws." *Id.* at pg. 6.

He makes no arguments regarding the applicability of the exemptions relied on by the Defendants. Instead, he appears focuses on the alleged conspiracy between various government agencies and on the delay in the production of the documents.

### 4.  The FOIA

The FOIA was enacted "to facilitate public access to Government documents." *United States Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)(citation omitted). Subject to certain statutory exemptions, federal agencies "upon any request for records which reasonably describe such records . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). There are nine enumerated exemptions. 5 U.S.C. § 552(b).

The "strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents. That burden remains with the agency when it seeks to justify the redaction of identifying information in a particular document as well as when it seeks to withhold an entire document." *U.S. Dep't of States v. Ray*, 502 U.S. 164, 173 (1991).

-8-

The FOIA also requires an agency to determine within twenty days (excluding Saturdays, Sundays, and legal public holidays) whether documents should be provided or withheld and the reasons therefor.  5 U.S.C. § 552(a)(6)(A)(i).  An agency may by written notice obtain a ten day extension of time for unusual circumstances.  5 U.S.C. § 552(a)(6)(B)(i).

The FOIA has an expedited processing provision, which requires agencies to "promulgate regulations . . . providing for expedited processing of requests for records" in cases where the "person requesting demonstrates a compelling need." 5 U.S.C. § 552(a)(6)(E)(i).  Once a request for expedited processing is made, the agency is required to make a determination of whether to provide expedited processing and notify the person requesting the information within ten days. 5 U.S.C. § 552(a)(6)(E)(ii)(I).

### Secretary Vilsack

The Secretary is entitled to dismissal from this case.  The FOIA only authorizes suits against certain executive branch agencies not individuals.  *See* 5 U.S.C. §§ 552(a)(4)(B)(authorizing suit against an agency); 552(f)(1) (definition of agency); *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006).

### Requests 4 and 5

Adams may not bring an FOIA action on behalf of Cherie Adams.  In *McDonnell v. United States*, 4 F.3d 1227 (3rd Cir. 1993), the Court faced this same issue, it said:

> [A] person whose name does not appear on a request for records has not made a
> formal request for documents within the meaning of the [FOIA]. Such a person,
> regardless of his or her personal interest in disclosure of the requested documents,
> has no right to receive either the documents or notice of an agency decision to
> withhold the documents. . . . Accordingly, a person like [Adams] whose name
> does not appear on a FOIA request for records may not sue in district court when

-9-

the agency refuses to release requested documents because he has not administratively asserted a right to receive them in the first place.

*Id.* at 1236-37.

### Requests 6 and 7

Exhaustion of administrative remedies is a prerequisite to a suit under the FOIA. *Brumley v. U.S. Dep't of Labor*, 767 F.2d 444, 445 (8th Cir. 1985).  Under the FOIA, § 552(a)(6)(C),when an agency fails to comply with the statutory time limits the requestor shall be deemed to have exhausted his administrative remedies.  *Pollack v. Dep't of Justice*, 49 F.3d 115, 118 (4th Cir. 1995)(When "an agency fails to comply in a timely fashion to a proper FOIA request, it may not insist on exhaustion of administrative remedies unless the agency responds to the request before suit is filed").  However, the "constructive exhaustion provision of FOIA, 5 U.S.C. § 552(a)(6)(C), permits a requester to bring suit in federal district court only if he has not yet received a determination from the agency on his request.  If he has received an adverse determination before brining suit, he must pursue the matter through the agency appeal process." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 71 (D.C. Cir. 1990).

The agency response to Request 6, dated September 30, 2010, was made on November 5, 2010.  *Defts' Ex.* 4 at ¶ 4.  The agency responded to Request 7, dated August 21, 2010, on August 31, 2010.  This lawsuit was filed on December 10, 2010.  Adams received the responses to both Requests 6 and 7 prior to filing this lawsuit and was required to exhaust his administrative remedies prior to filing this case.  Defendants are entitled to summary judgment on Requests 6 and 7.

AO72A
(Rev. 8/82)

### Requests 1 and 2

As noted above, the USDA located 3,200 pages responsive to these two requests.  On December 16, 2011, it released ten pages in full and 3,190 pages in part.  The redactions were made pursuant to three separate FOIA exemptions.

With respect to the first set of documents consisting of 3,175 pages, referred to as Document 1, the USDA relied on exemptions (b)(4), (b)(6), and (b)(7)(C).  Exemption 5 U.S.C. § 552(b)(4), the trade secret exemption, and provides:" [t]his section does not apply to matters that are . . . . (4) trade secrets and commercial or financial information obtained from a person and privileged or confidential."  *Id.*  For purposes of this exemption, "commercial or financial matter is confidential . . . if disclosure of the information is likely to have either of the following effects: (1) to impair the Government's ability to obtain necessary information in the future; or (2) to cause substantial harm to the competitive position of the person from whom the information was obtained."  *Watkins v. U.S. Bureau of Customs and Border Protection*, 643 F.3d 1189, 1194 (9th Cir. 2011)(internal quotation marks and citations omitted).  The Government in not required to "show that releasing the documents would cause actual competitive harm.  Rather the government need only show that there is (1) actual competition in the relevant market, and (2) a likelihood of substantial competitive injury if the information were released."  *Id.*

"Courts can rely solely on government affidavits so long as the affiants are knowledgeable about the information sought and the affidavits are detailed enough to allow the court to make an independent assessment of the government's claim."  *Watkns*, 643 F.3d at 1195 (internal quotation marks and citations omitted).  While the court "need not conduct a sophisticated economic analysis of the likely effects of disclosure[,] . . . [c]onclusory and

-11-

generalized allegations of substantial competitive harm . . . are unacceptable and cannot support an agency's decision to withhold requested documents." *Id.*

Here, the *Vaughn* index description of Document 1 is "USDA, Food Safety Inspection Service (FSIS), Noncompliance Record Reports for the Tyson Foods, Inc., Plant in Green Forest, [AR] for 2009 through 2010." *Defts' Ex.* 1, *Attachment* 1, at pg. 1. Portions of the 3,175 pages were redacted. *Id.* Both the *Vaughn* index and the declaration of Lenzy indicate that the Government redacted portions of the responsive documents that "referred to specific commercial practices that constituted business information of Tyson Foods." *Defts' Ex.* 1 at ¶ 6; *Defts' Ex.* 1, *Attachment* 1 at pg. 1.

Neither the *Vaughn* index nor the declarations describe in reasonable specificity the information withheld or the justification for non-disclosure. The description of the documents withheld merely states they are non-compliance reports on Tyson Foods' Green Forest plant. The Court is not told what type of information is in these documents. With respect to the justification for withholding the documents, the language primarily consists of the language of the statutory exemption and a discussion of applicable case law.

Exemption (b)(6) permits an agency to withhold documents when they are "personnel and medical files and similar files the disclosure of which would constitutes a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Pursuant to this exemption, the Government redacted "personal identifying information of Tyson Foods, Inc.'s employees." *Morales v. Pension Ben. Guar. Corp.*, 2012 WL 253407 (D. MD January 26, 2012)(exemption (b)(6) permits the redaction of employee's names from the records). The redactions were in accordance with this exemption.

-12-

Exemption (b)(7)(C) protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasions of personal privacy." 5 U.S.C. § 552(b)(7)(C). "In order to withhold information under exemption 7, the government has the burden of showing the records it seeks to shelter under Exemption 7 were compiled for adjudicatory or enforcement purposes." *Patterson v. I.R.S.*, 56 F.3d 832, 836 (7th Cir. 1995)(internal quotation marks and citations omitted).

The redactions at issue involved noncompliance records for a specific Tyson Foods plant. Pursuant to this exemption, the USDA redacted the names, signatures, and personal identifying information of its investigators. Law enforcement officials "have the right to be protected against public disclosure of their participation in law enforcement investigations pursuant to exemption (b)(7)(C)." *Ingle v. Dep't of Justice*, 698 F.2d 259, 269 (6th Cir. 1994); *Doherty v. U.S. Dep't of Justice*, 775 F.2d 49 (2d Cir. 1985)(identities of employees and third-parties in whom there was an investigatory interest).

With respect to Document 2, consisting of fifteen pages, the only information withheld was personal identifying information of USDA employees and third panties. As discussed above, this information may properly be redacted.

### Delay in Processing

With respect to Requests 1 and 2, there was a substantial period of delay prior to the USDA producing the response documents. Specifically neither Request 1, dated August 12, 2009, or Request 2, dated August 20, 2010, were responded to until December 16, 2011. "[T]he proper recourse for a party aggrieved by delay that violated a statutory deadline is to apply for

-13-

a court order compelling agency actions." *Gottlieb v. Pena*, 41 F.3d 730, 734 (D.C. Cir. 1994);

*see also* 5 U.S.C. § 552(A)(4)(B)(no provision for monetary damages); *Thompson v. Walbran*,

990 F.2d 403, 404 (8th Cir. 1993).

Agency action to deny expedited processing or the failure of an agency to respond in a

timely manner to a request for expedited processing is subject to judicial review.  5 U.S.C. §

552(a)(6)(E)(iii).   However, the Court only has jurisdiction to "review an agency denial of

expedited processing" prior to the agency response to the FOIA request.   5 U.S.C. §

552(a)(6)(E)(iv).   The Court therefore cannot now review the "denial" of Adams' claim for

expedited processing.   *Judicial Watch, Inc. v. U.S. Naval Observatory*, 160 F. Supp. 2d 111,

113-114 (D.D.C. 2001).   However, the Court does have jurisdiction to review the USDA's

decision to withhold records.

### Request 3 and Appeal 1

Request 3 asks for all records regarding Tyson Foods wrongfully accusing Adams of

being a danger to food products or placing him under the jurisdiction of the BioTerrorism or

Patriot Act watch list.  *Defts' Ex.* 2 at ¶ 1.  A search revealed no responsive documents and on

July 19th a letter was sent to Adams advising him of this fact.  *Id.* at ¶ 5.  An appeal was

submitted by Adams on August 20, 2010.  *Amended Complaint* (Doc. 13-3) *Exhibit* C.  A second

search was completed and on April 18, 2010, the USDA advices him that no responsive

documents were found.

There is nothing in the record to suggest that responsive documents do exist.  There is

no indication that any of the responsive documents would have been created by, or sent to, the

USDA.

-14-

### 5.  The APA

"Under the APA an entity aggrieved by final agency action is entitled to judicial review. While a presumption exists to permit judicial review of agency decisions, the APA [5 U.S.C. § 704] only allows review where there exists "no other adequate remedy in a court.'" *Central Platte National Resources Dist. v. U.S. Dept. of Agriculture*, 643 F.3d 1142, 1148 (8th Cir. 2011)(internal citations and quotation marks omitted).  The "FOIA specifically bars judicial review of an APA claim where the claimant seeks a court order to produce the same documents under both [the] FOIA and the APA. A party may advance an APA claim as well as another type of claim only if the APA claim does not duplicate existing procedures for review of an agency action. " *Id.*  In this case, the APA claim duplicates the FOIA claim.  Defendants are therefore entitled to summary judgment on this claim.

### 6.  Equal Access to Justice Act (EAJA)Claim

In his EAJA claim, Adams seeks an award of legal fees and costs totaling $10,000.  The FOIA contains its own fee provision.  It provides that "reasonable attorney fees and other litigation costs" may be awarded to a complainant who has "substantially prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  Under either the EAJA or the FOIA, *pro se* plaintiffs are not entitled to attorney's fees.  *See e.g., Kay v. Ehrler*, 499 U.S. 432, 437 (1991)(analogous fee shifting provision of 42 U.S.C. § 1988); *Kooritzky v. Herman*, 178 F.3d 1315, 1319 (D.C. Cir. 1999)(EAJA); *Burka v. U.S. Dep't of Health and Human Services*, 142 F.3d 1286, 1290 (D.C. Cir. 1998)(FOIA).

-15-

**7.  Conclusion**

For the reasons stated, I recommend that Defendants' summary judgment motion (Doc. 26) be granted in part and denied in part.  Specifically, I recommend the motion be granted with respect to the following: all claims against Thomas L. Vilsack; all claims with respect to Requests 3-7 and Appeal 2; all claims under the APA; all claims for expedited processing and/or for a delay in processing; the portions of Requests 1-2 that rely on exemptions §§ 552(b)(6) and 552(b)(7)(C).  This leaves for later resolution Requests 1 and 2 and Appeal 1 based on the USDA's claim the records are exempt from disclosure under § 552(b)(4).

With respect to this remaining issue, Defendants should be directed to file a supplemental summary judgment motion with a more detailed *Vaughn* index and accompanying declarations.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 10th day of August 2012.


/s/ *J. Marschewski*
_____
 HON. JAMES R. MARSCHEWSKI
 CHIEF UNITED STATES MAGISTRATE JUDGE

-16-